# EXHIBIT A

SECOND JUDICIAL DISTRICT - OGDEN DISTRICT COURT
WEBER COUNTY, STATE OF UTAH


DUSTIN GRANTHAM vs. IHEAT GROUP et al.

CASE NUMBER 240907356 Product Liability

---

CURRENT ASSIGNED JUDGE
        CAMILLE NEIDER


PARTIES
        Plaintiff - DUSTIN GRANTHAM
        Represented by: BRONSON BILLS
        Represented by: JUDSON BURTON

        Defendant - SHENZHEN TEJIALI TECHNOLOGY CO

        Defendant - IHEAT GROUP

        Defendant - ZHANGFENGQING

        Defendant - AMAZONCOM LLC


ACCOUNT SUMMARY
                Total Revenue Amount Due:        375.00
                             Amount Paid:        375.00
                           Amount Credit:          0.00
                                 Balance:          0.00
        REVENUE DETAIL - TYPE: COMPLAINT - NO AMT S
                     Original Amount Due:        375.00
                      Amended Amount Due:        375.00
                            Amount Paid:         375.00
                          Amount Credit:           0.00
                                Balance:           0.00


CASE NOTE


PROCEEDINGS
10-28-2024   Case filed by efiler
10-28-2024   Fee Account created Total Due: 375.00
10-28-2024   COMPLAINT - NO AMT S Payment Received:  375.00
10-28-2024   Judge CAMILLE NEIDER assigned.
10-28-2024   Note: discovery tier set to 2
10-28-2024   Filed: Complaint
10-28-2024   Filed: Return of Electronic Notification
11-07-2024   Filed return: Return of Service ROS - Amazon upon SYDNEY ALGER
             for
                 Party Served: AMAZONCOM LLC
                 Service Type: Personal

---

CASE NUMBER: 240700194 Judicial Liability

Service Date: November 01, 2024
Garnishee:

11-07-2024   Filed: Return of Electronic Notification

Bronson D. Bills (10185)
Judson D. Burton (15560)
PARKER & MCCONKIE
7090 S Union Park Ave., Suite 160
Midvale, UT 84047
Telephone: (801) 845-0440
Facsimile: (801) 210-7072
judson@pmcinjurylaw.com
bronson@pmcinjurylaw.com

*Attorneys for Plaintiff*

---

## IN THE SECOND JUDICIAL DISTRICT COURT
## WEBER COUNTY, STATE OF UTAH

| | |
|---|---|
| DUSTIN GRANTHAM, an individual, <br><br> *Plaintiff,* <br><br> vs. <br><br> iHEAT GROUP, a foreign company; SHENZHEN TEJIALI TECHNOLOGY CO., LTD., a foreign company; ZHANGFENGQING, a foreign company, and; AMAZON.COM, LLC, a domestic corporation. <br><br> *Defendants.* | **SUMMONS** <br><br> Case No. 240907356 <br><br> Judge Camille Neider |

**TO:    Corporation Service Company**
       **c/o Amazon.com, LLC**
       **15 West South Temple, Suite 600**
       **Salt Lake City, Utah 84101**

**YOU ARE HEREBY SUMMONED** and required to file an Answer in writing to the

attached Complaint with the Clerk of the above-entitled Court, located at 2525 Grant Avenue,

Ogden, Utah, 84401 and to serve a copy of said Answer upon, or mail to Bronson Bills, or

1

Judson Burton of Parker and McConkie, 7090 South Union Park Ave, Suite 160, Midvale, Utah 84047 within twenty one (21) days after service of this Summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint, the original of which has been filed with the Clerk of the Court and a copy of which is hereto annexed and herewith served upon you.

DATED this _28th_ day of October 2024

PARKER & MCCONKIE

_/s/ *Bronson Bills*_
Bronson Bills
*Attorney for Plaintiff*

2

Bilingual Notice to Responding Party for In-State Summons (for compliance with URCP 4)

| | |
|---|---|
| A lawsuit has been filed against you. You must respond in writing by the deadline for the court to consider your side. The written response is called an Answer. | Se ha presentado una demanda en su contra. Si desea que el juez considere su lado, deberá presentar una respuesta por escrito dentro del periodo de tiempo establecido. La respuesta por escrito es conocida como la Respuesta. |
| **Deadline!**<br>Your Answer must be filed with the court and served on the other party **within 21 days** of the date you were served with this Summons.<br><br>If you do not file and serve your Answer by the deadline, the other party can ask the court for a default judgment. A default judgment means the other party can get what they asked for, and you do not get the chance to tell your side of the story. | **¡Fecha límite para contestar!**<br>Su Respuesta debe ser presentada en el tribunal y también con la debida entrega formal a la otra parte **dentro de 21 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio.<br><br>Si usted no presenta una respuesta ni hace la entrega formal dentro del plazo establecido, la otra parte podrá pedirle al juez que asiente un fallo por incumplimiento. Un fallo por incumplimiento significa que la otra parte recibe lo que pidió, y usted no tendrá la oportunidad de decir su versión de los hechos. |
| **Read the complaint/petition**<br>The Complaint or Petition has been filed with the court and explains what the other party is asking for in their lawsuit. Read it carefully. | **Lea la demanda o petición**<br>La demanda o petición fue presentada en el tribunal y ésta explica lo que la otra parte pide. Léala cuidadosamente. |
| **Answer the complaint/petition**<br>You must file your Answer in writing with the court **within 21 days** of the date you were served with this Summons. You can find an Answer form on the court's website: utcourts.gov/ans<br><br>Scan QR code to visit page | **Cómo responder a la demanda o petición**<br>Usted debe presentar su Respuesta por escrito en el tribunal **dentro de 21 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio. Puede encontrar el formulario para la presentación de la Respuesta en la página del tribunal: utcourts.gov/ans-span<br><br>Para accesar esta página escanee el código QR |

Bilingual Notice to Responding Party for In-State Summons (for compliance with URCP 4)

| | |
|---|---|
| **Serve the Answer on the other party**<br>You must email, mail or hand deliver a copy of your Answer to the other party (or their attorney or licensed paralegal practitioner, if they have one) at the address shown at the top left corner of the first page of this Summons. | **Entrega formal de la respuesta a la otra parte**<br>Usted deberá enviar por correo electrónico, correo o entregar personalmente una copia de su Respuesta a la otra parte (o a su abogado o asistente legal, si tiene) a la dirección localizada en la esquina izquierda superior de la primera hoja del citatorio. |
| **Finding help**<br>The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics. <br>Scan QR code to visit page | **Cómo encontrar ayuda legal**<br>Para información sobre maneras de obtener ayuda legal, vea nuestra página de Internet Cómo Encontrar Ayuda Legal. (utcourts.gov/help-span) <br>Para accesar esta página escanee el código QR<br>Algunas maneras de obtener ayuda legal son por medio de una visita a un taller jurídico gratuito, o mediante el Centro de Ayuda. También hay ayuda legal a precios de descuento y consejo legal breve. |

| | |
|---|---|
| <br>قم بالمسح الضوئي للرمز لزيارة الصفحة | An Arabic version of this document is available on the court's website:<br>توجد:نسخة عربية من هذه الوثيقة على موقع المحكمة على الإنترنت<br>utcourts.gov/arabic |
| A Simplified Chinese version of this document is available on the court's website:<br>本文件的简体中文版可在法院网站上找到：<br>utcourts.gov/chinese | <br>请扫描QR码访问网页 |
| A Vietnamese version of this document is available on the court's website:<br>Một bản tiếng Việt của tài liệu này có sẵn trên trang web của tòa:<br>utcourts.gov/viet | <br>Xin vui lòng quét mã QR (Trả lời nhanh)để viếng trang |

Bronson D. Bills (10185)
Judson D. Burton (15560)
PARKER & MCCONKIE
7090 S Union Park Ave., Suite 160
Midvale, UT 84047
Telephone: (801) 845-0440
Facsimile: (801) 210-7072
judson@pmcinjurylaw.com
bronson@pmcinjurylaw.com

*Attorneys for Plaintiff*

---

## IN THE SECOND JUDICIAL DISTRICT COURT
## WEBER COUNTY, STATE OF UTAH

| | |
|---|---|
| DUSTIN GRANTHAM, an individual, <br><br> *Plaintiff,* <br><br> vs. <br><br> iHEAT GROUP, a foreign company; SHENZHEN TEJIALI TECHNOLOGY CO., LTD., a foreign company; ZHANGFENGQING, a foreign company, and; AMAZON.COM, LLC, a domestic corporation. <br><br> *Defendants.* | **COMPLAINT** <br> (Tier 3) <br><br><br> Case No. 240907356 <br><br> Judge Camille Neider |

Plaintiff, Dustin Grantham, by and through counsel, Bronson D. Bills and Judson D. Burton, PARKER & MCCONKIE, hereby files this Complaint against Defendants iHeat Group, Zhangfengqing, Shenzhen Tejiali Technology Co., Ltd., and Amazon.com, LLC, for strict product liability, negligence, gross negligence, breach of implied warranty of merchantability, promissory estoppel, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Utah Consumer Sales Practices Act.

## <u>INTRODUCTION</u>

1

Plaintiff's claims arise out of the sale of a pair of "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," which was manufactured by iHeat Group and purchased by Plaintiff online through Amazon.com. The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" was marketed by Defendants as safe and effective, and was advertised, packaged and warranted to, *inter alia*, be suitable for outdoor winter activities, to promote blood circulation, to provide benefits to individuals with arthritis, poor circulation, stiff joints, and other conditions. Contrary to the marketing statements, advertisements, and packaging, the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" were inherently dangerous, defective, and spontaneously exploded and started on fire while Plaintiff was using the product in his work boot, causing serious personal injuries to Plaintiff.

## **PARTIES**

1.      Plaintiff Dustin Grantham ("Dustin") is an individual who resides in Weber County, Utah.

2.      Defendant iHeat Group ("iHeat")[1] is a foreign company existing and organized under the laws of the People's Republic of China, with its principal place of business in Shenzhen City, Guangdong City, China.

3.      Defendant Zhangfengqing is a foreign company existing and organized under the laws of the People's Republic of China, with its principal place of business in Shenzhen City, Guangdong City, China.

---

[1] According to Amazon's "detailed seller information," the "business name" of iHeat is "Zhangfengqing." iHeat's website, iHeat Group's "company name" is: Shenzhen Tejiali Technology Co., Ltd. *See* iHeat Group, https://iheatgroup.com/about-us/ (last visited October 23, 2024).

2

4.      Defendant Shenzhen Tejiali Technology Co., Ltd. ("Shenzhen Tejiali") is a foreign company existing and organized under the laws of the People's Republic of China, with its principal place of business in Shenzhen City, Guangdong City, China.

5.      Defendant Amazon.com, LLC ("Amazon") is a domestic corporation organized under the laws of the State of Delaware with its principal place of business in King County, Washington.

### JURISDICTION & VENUE

6.      Jurisdiction is proper pursuant to Utah Code Ann. § 78A-5-102.

7.      Venue is proper pursuant to Utah Code Ann. § 78B-3-307.

### TIER DESIGNATION

8.      Plaintiff designates this case as Tier III under Rule 26 of the Utah Rules of Civil Procedure as Plaintiff alleges damages in excess of $300,000.00.

### FACTUAL ALLEGATIONS

#### *Defendants iHeat, Shenzhen, and Zhangfengqing*

9.      iHeat develops, designs, manufactures, constructs, imports, distributes, sells and/or otherwise places in the stream of commerce electrically heated products including, but not limited to the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

10.     Under the "Customer Service" link on iHeat's website (https://iheatgroup.com), iHeat's website states that its company name is "Shenzhen Tejiali Technology Co., Ltd."[2]  In light of the foregoing, all allegations made about iHeat are also made against Defendant Shenzhen Technology Co., Ltd.

---

[2] *See* iHeat, https://iheatgroup.com/contact-us/ (last visited October 24, 2024).

11.   iHeat sells and places its electrically heated insoles, including but not limited to, the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" into the stream of commerce under the iHeat brand name.

12.   iHeat manufactures and sells rechargeable heated products for use in the cold outdoors. For example, in addition to the iHeat heated insole, iHeat also manufactures and sells the iHeat Heated Jacket, the iHeat Heated Glove, the iHeat Heated Socks, the iHeat Heated Vest, and the iHeat Woman's Heated Jacket.

13.   iHeat's website states the following about itself:

> **"WELCOME TO IHEAT.** iHeat has the latest patented heating technology and is well-known for professional research and producing heated products in the field of low voltage intelligent over 9 years. We specialized in producing safe, comfortable, fast, and uniform heated gloves, heated clothes, heated socks, heated insoles and so on – all powered by UL-Certified rechargeable batteries. Our heated products are designed for all walks of life."

14.   At all times relevant herein, iHeat's website made the following statements, representations, guarantees, warranties and/or promises on its own website regarding its products, including heated insoles, and the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping:"

> **"Our Sincerity.** With the idea of bringing warmth to those who suffer from raynaud's, frostbite, stiff joints and feel cold in the heavy winter. At iHeat, we strive to make heated items you can depend on. Our goal is to provide timeless thermal merchandise, focusing on quality, safety and economy. We want you to be fully satisfied with any item you purchase from iHeat. We offer a 30-day money back guarantee alongside a 3-year warranty covering any heating elements of your purchase."

> **"Our Expectations.** We want to create new opportunities for your family members, friends and you to enjoy outdoor activities! The cold weather shouldn't prevent anyone from spending time doing what they want to do, whether it is hunting, fishing, or simply walking your dogs. We would deeply appreciate it if you can share your valuable experience with us kindly. iHeat Store are ready to help you find the perfect heated items for your lifestyle."

4

15. iHeat stated, represented, guaranteed, warrantied and/or promised that all iHeat products, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," meets all safety standards.

16. iHeat's website offers a one-year warranty on all iHeat products, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," "because your [i.e., the consumer] satisfaction is our number one priority."

17. iHeat's website states that all iHeat products, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," include a "one-year limited warranty that covers malfunctions due to manufacturing defects. This includes the battery, charger, and heating elements."

18. Despite iHeat's statements, representations, guarantees, warranties, and/or promises regarding the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," upon reason and belief, the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" were not safety tested by Underwriters Laboratories or any other Nationally Recognized Testing Laboratory, and did not comply with or meet recognized safety standards.

### *iHeat and Amazon.com*

19. At all times relevant herein, iHeat marketed, advertised, sold, and placed its "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" into the stream of commerce through various means, its own website (https://iheatgroup.com) and on Amazon.com.

5

20. At all times relevant herein, iHeat made various statements, representations, guarantees, warranties and/or promises on the Amazon.com website regarding the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" which included, but are not limited to, to the following:

- "Perfect for extreme cold weather activities like hunting, skiing, snowboarding, and more."
- "Ideal for winter work and adventures."
- "Comfortable and a pleasure to wear throughout the day"
- "Promotes blood circulation"
- "Benefits individuals with arthritis, poor circulation, stiff joints, and other conditions"
- "Provides arch support and reduces foot stress, allowing for more comfortable and supported walking"
- Provide all-day comfort up to 10+ hours of continuous warmth, ensuring feet "stay toasty during outdoor activities."
- Ergonomic design and ventilation holes ensure optimal air and heat distribution.
- "Experience warmth, comfort, and support like never before with iHeat heated insoles"

### *The Amazon Marketplace and Business Solutions Agreement ("BSA")*

21. Amazon owns, operates and controls an online marketplace for consumers – Amazon.com, also known as the Amazon marketplace – that includes listings for consumer products.

22. Through Amazon.com, Amazon offers an e-commerce marketplace in which Amazon and other merchants can connect with consumers via the internet.

23. Products offered for sale on Amazon.com appear on webpages known as product listings and are identified by what is known as an "Amazon Standard Identification Number," commonly referred to as an "ASIN," which are specifically assigned by Amazon.

6

24.     Merchants who wish to sell products on Amazon.com are required to enter into a business arrangement with Amazon to participate in Amazon's consumer marketplace, which includes an Amazon Services Business Solutions Agreement ("BSA").

25.     iHeat sells and places its products, which include, but is not limited to, the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," into the stream of commerce through its own website (https://iheatgroup.com), and as a third-party seller elsewhere, including Amazon.com.

26.     Amazon requires third-party sellers register with Amazon and provide detailed seller information, which users can click on and see the name and address of the seller.

27.     The detailed seller information on Amazon.com that appears for iHeat's "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," is the name Zhangfengqing, located in the People's Republic of China. In light of the foregoing, all allegations made by Plaintiff against iHeat are also made against Zhangfengqing and Shenzhen Technology Co., Ltd.

28.     Through Amazon's BSA, Amazon is integrally involved in and exerts extensive control over the sale and distribution of third-party products.

29.     Under the terms of the BSA, Amazon requires that third-party sellers enroll by completing a registration process. *See* BSA § 1.

30.     Under the terms of the BSA, Amazon may at any time cease providing any or all services to the third-party seller at Amazon's sole discretion and without notice. *See* BSA § 1.

31.     Under the terms of the BSA, Amazon requires that third-party sellers represent that they are duly organized, validly existing, and in good standing. *See* BSA § 5.

7

32.     Under the terms of the BSA, Amazon requires that third-party sellers represent that they will comply with all applicable laws. *See id.*

33.     Under the terms of the BSA, Amazon has the "right to determine, the design, content, functionality, availability and appropriateness of its websites, selection, and any product or listing in the Amazon Stores, and all aspects of each Service, including your use of the same. Amazon may assign any of these rights or delegate any of its responsibilities." *See* BSA § S-6.

34.     Under the terms of the BSA, Amazon has the right, in Amazon's sole discretion, to determine the content, appearance, design, functionality and all other aspects of the AmazonSites, including by redesigning, modifying, removing or restriction access to any of them, and by suspending, prohibiting or removing any listing." *See* BSA § S-7.

35.     Under the terms of the BSA, Amazon may withhold any payments to a third-party seller if, in Amazon's sole discretion, it determines that the seller's actions or performance may result in claims, disputes or other risks. *See* BSA § 2.

36.     Under the terms of the BSA, if Amazon determines that a third-party seller's account "has been used to engage in deceptive, fraudulent or illegal activity, then [Amazon] may in [Amazon's] sole discretion permanently withhold any payments" to the seller. *See id.*

37.     Under the terms of the BSA, Amazon requires third-party sellers to ensure that its "Products (including packaging) . . . comply with all applicable Laws (including . . . marking and labeling requirements). *See* BSA § S-1.1.

38.     Under the terms of the BSA, Amazon requires third-party sellers to release, indemnify, defend and hold Amazon harmless "against any claim, loss, damage, settlement, cost, expense or other liability (including without limitation, attorney's fees) arising from or

8

related to. . . [the third-party seller's] products . . . and any personal injury, death or property damage related thereto." *See* BSA § 6.1; *see also* BSA § F-10.

39.    Under the terms of the BSA, Amazon requires third-party sellers to keep confidential certain Amazon information, including Amazon Transaction Information (i.e., Order Information), and restricts its use by third-party sellers. *See* BSA §§ 11 and 14.

40.    Under the terms of the BSA, Amazon "may use mechanisms that rate, or allow shoppers to rate, [the third-party seller's] Products and [their] performance as a seller and Amazon may make these ratings and feedback publicly available. *See* BSA § S-1.2.

41.    Under the terms of the BSA, Amazon has the "exclusive right" to receive all sales proceeds on the third-party seller's behalf for each transaction. *See id.*

42.    Under the terms of the BSA, Amazon agreed to bear the risk of credit card fraud (i.e., a fraudulent purchase arising from the theft and unauthorized use of a third party's credit card information) in connection with [a third-party seller's] Transaction. *See* BSA § S-1.4.

43.    Under the terms of the BSA, if a third-party seller violates Amazon's policies or applicable law, Amazon may take corrective action, including suspending the seller, and withholding payments to the seller. *See* BSA § 3.

44.    Under the terms of the BSA, third-party sellers must pay Amazon (a) appliable Referral Fees [a fee based on Sales Proceeds]; (b) any applicable Variable Closing Fee; (c) anon-refundable Selling on Amazon Subscription Fee in advance each month; and (d) any other applicable fees. *See* BSA § S-5.

45.    Under the terms of the BSA, Amazon is responsible for all customer service issues related to refunds, customer returns, and adjustments. *See* BSA § F-8.2.

### *The Fulfillment by Amazon ("FBA") Program:*

9

46.     Amazon also offers third-party vendor services for additional fees, including the Fulfillment by Amazon ("FBA") program and payment processing service that charges buyers and remits the purchase price to the third-party vendor, less the fees that Amazon retains.

47.     Amazon offers a variety of services in furtherance of bringing its FBA products to consumers' doorsteps. These services include, but are not limited to, storing FBA products at Amazon fulfillment centers, stocking and maintaining an inventory of FBA products, and administering additional sorting and shipping services, including the use of Amazon employees to interact with the product, categorize it with the help of computers and robots, label it, and move it through the distribution process. Additional services include Amazon's retrieval of FBA products from the merchant's inventory, placement of FBA products in a shipping container, delivery of FBA products directly to consumers' doorsteps in Amazon delivery vehicles or via a shipping carrier Amazon procures, approval of all FBA ASINs, provision of 24/7 customer service, and processing all FBA product returns.

48.     Once a third-party seller is accepted into the FBA, it "must apply to register each product you offer that you wish to include in the FBA program." *See* BSA § F-1.

49.     Amazon "may refuse registration in the FBA of any product, including on the basis that it is an FBA Excluded Product or that it violates applicable Program Policies." *See* BSA § F-1.

50.     FBA is limited to units that are shipped to and from Amazon's fulfillment centers. *See* BSA § F-3.1.

51.     Amazon requires that FBA products be shipped to them in accordance with Amazon's applicable Program Policies. *See id.*

52.     Amazon may, at its option, allow third-party sellers to ship Units at Amazon's expense to Amazon fulfillment centers using discounted shipping rates that Amazon may make available for

10

certain carriers, and Amazon will be the payer of record with respect to all Units shipped to them using such discounted rates. *See* BSA § F-3.3.

53.    Amazon may refuse to accept or may return or dispose of any "Unsuitable Unit." *See* BSA § F-3.2.

54.    An "unsuitable unit" is a unit that is "defective, damaged, unfit for a particular purpose, or lacking required labels," was not properly registered with Amazon, does not comply with the agreement, is "unsellable or unfulfillable," or any reason "Amazon determines is otherwise unsuitable." *See* BSA § F-3.2; *see also* FBA definitions.

55.    Amazon may dispose of an unsuitable unit in Amazon's discretion if Amazon determines a third-party seller such as iHeat has a product that is a "safety, health, or liability risk to Amazon, Amazon's personnel, or any third party." *See* BSA § F-7.2.

56.    Amazon may dispose of an unsuitable unit in Amazon's discretion if Amazon determines a third-party seller such as iHeat has engaged in fraudulent or illegal activity. *See id.*

57.    Amazon maintains electronic records that track inventory of all products stored in Amazon Fulfillment Centers or other Amazon warehouses or facilities. *See* BSA § F-4.

58.    Amazon may move units among its facilities. *See id.*

59.    Amazon is not required to physically mark or segregate a third-party seller's Units from other inventory, including inventory owned by Amazon, and may elect to commingle such inventory at its fulfillment centers. *See* BSA § F-4.

60.    As part of the FBA program, Amazon "will ship Units from our inventory of your products to the shipping addresses" of customer orders.  *See* BSA § F-5.

61.    Amazon reserves the right to ship Units together with products purchased from other merchants, including Amazon's own affiliates. *See* BSA § F-5.

11

62.    Amazon employees, with the assistance of Amazon's electronic records and automation at Amazon's facilities, physically ship or cause to be shipped through a shipping carrier the FBA products ordered by consumers.

63.    Amazon selects the shipping carrier and makes arrangements with the shipping carrier to pick up the product from one of Amazon's fulfillment centers or warehouses for delivery to the customer.

64.    Amazon is "responsible for and [has] sole discretion regarding all customer service issues relating to packaging, handling and shipment and customer returns, refunds and adjustments related to Amazon Fulfillment Units. *See* BSA § F-8.2.

65.    Amazon will determine whether a customer will receive a refund, adjustment or replacement for any Amazon Fulfillment Unit. *See* BSA § F-8.2

66.    Amazon may return Units to the third-party seller for any reason, and Amazon "may dispose of any Units we are entitled to dispose of in the manner [Amazon] prefer[s]. Title to each disposed Unit will transfer to [Amazon] at no cost to [Amazon] as necessary for [Amazon] to dispose of the Unit, and [Amazon] will retain all proceeds, if any, received from the disposal of any Unit." *See* BSA §§ F-7.1 and 7.2.

67.    When consumers return an FBA product, the consumers ship the product back to Amazon, not the merchant.

68.    When a product is returned, Amazon inspects the FBA product and determines whether the product can be resold. If Amazon determines that the FBA product can be resold, Amazon returns the product to the inventory at the applicable Amazon facility. If Amazon determines that the product cannot be resold, the merchant may choose to have it sent to its own facility.

69.     If inventory is damaged or misplaced while in Amazon's control (in the fulfillment center, during delivery to or from a customer or inbound if using an Amazon Partnered Carrier), Amazon will purchase the inventory from the FBA seller.[3]

70.     Amazon assures sellers that when they ship their inventory to Amazon for fulfillment, they can be assured that it will be stored in a secure environment.[4]

71.     Amazon charges FBA sellers a storage fee beginning on the day (up to midnight) that the Unit arrives at a fulfillment center and is available for fulfillment by Amazon until the earlier of (a) the day (up to midnight) Amazon receives a valid customer order for the product request from the seller to return or dispose of the Unit, or (b) the day (up to midnight) Amazon actually ships the Unit to the seller's designated return location or disposes of the Unit. *See* BSA § F-9.1.

72.     Amazon determines the amounts charged to customers for shipping and gift wrap service for Units fulfilled through the FBA Program. *See* BSA § F-9.2.

73.     The contracts between Amazon and merchants also state that Amazon: (a) has the authority to format the product's listing on its online marketplace, which includes how a listing is displayed to consumers; (b) may reject products that Amazon determines are illegal, sexually explicit, defamatory, or obscene; (c) will require merchants to communicate with their customers exclusively through Amazon's platform; and (d) shall process payments for all purchases of the FBA products, charge the payment instrument designated in each individual consumer's account, and remit the agreed-upon monies to the merchant minus the service fees due to Amazon set forth in the applicable contracts.

---

[3] *See* Amazon, https://sellercentral.amazon.com/gp/help/external/G201081250?language=en_US (last visited October 20, 2024).
[4] *See* Amazon, https://sellercentral.amazon.com/gp/help/external/G201081250?language=en_US (last visited October 20, 2024).

13

74. Upon information and belief, though the amount varies depending on the product, Amazon's FBA fees can amount to as much or more than 40% of the sales price of any given product.

75. In addition, Amazon polices the prices charged by merchants listing products on amazon.com through its Fair Pricing Policy, which gives Amazon the right to act against merchants for pricing that harms consumer trust. The Fair Pricing Policy provides that "[p]ricing practices that harm customers include but are not limited to: . . . setting a price on a productor service [on amazon.com] that is significantly higher than recent prices offered on or off Amazon."[5]

76. Through the actions described above, Amazon is a "distributor" of a "consumer product" that is "distributed in commerce," for its FBA products.

77. In sum, Amazon acts as a "distributor" of its FBA products by: (a) receiving delivery of FBA consumer products from a merchant with the intent to further distribute the product; (b) holding, storing, sorting, and preparing for shipment FBA products in its warehouses and fulfillment centers; and (c) distributing FBA consumer products into commerce by delivering FBA products directly to consumers or to common carriers for delivery to consumers.

### iHeat's Relationship with Amazon

78. Amazon set the terms of its relationship with iHeat through its contractual agreements and policies including, but not limited to, the BSA and the FBA Program.

79. At all times relevant herein, iHeat was a party to a BSA with Amazon.

80. At all times relevant herein, iHeat was approved as a seller under Amazon's FBA Program.

---

[5] *See* Amazon, https://sellercentral.amazon.com/gp/help/external/G5TUVJKZHUVMN77V (last visited October 20, 2024).

81.   iHeat sold electric heated insoles on the Amazon marketplace website titled: "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

82.   iHeat registered the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" under Amazon's FBA Program.

83.   Amazon accepted and/or approved the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" as a registered Product under Amazon's FBA Program.

84.   Amazon assigned an Amazon Standard Identification Number ("ASIN") to the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

85.   Amazon marketed, advertised, sold, distributed, and placed the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" into the stream of commerce.

86.   At all times relevant herein, Amazon had in place a "Product Safety Team."

87.   Amazon assured and promised its users that its Product Safety Team "works to protect Amazon customers from risks of injury associated with products offered on Amazon by looking into and taking action on reported safety complaints and incidents."[6]

88.   Amazon assured and promised its users that Amazon "monitor[s] the products sold on our website for product safety concerns."[7]

89.   Amazon assured and promised its users that where a product has safety concerns,

---

[6] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=GLD7VXFKV4AWU78X&ref_=bsx_ro_dt_pa_link (last visited October 20, 2024).
[7] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=GLD7VXFKV4AWU78X&ref_=bsx_ro_dt_pa_link (last visited October 20, 2024)

15

Amazon "may remove the product from the website, reach out to sellers and manufacturers for additional information, place relevant warnings on the product detail page, or take other actions depending on the situation. We may also report product safety concerns to applicable government agencies in order to bolster their safety data and help facilitate any necessary recalls."[8]

90.   At all times relevant herein, Amazon also maintained and had in place an automated system that looked for safety-related keywords in customer reviews. Reviews that have those keywords are then evaluated by Amazon to determine whether there is a product safety issue

### *"Amazon's A-to-Z Guarantee"*

91.   At all times relevant herein, Amazon provided its customers with an "A-to-z Guarantee" for purchases made on its website, including purchases made from third-party sellers.

92.   The A-to-Z Guarantee protects Amazon customers when they buy items sold and fulfilled by a third-party seller. It covers both the timely delivery and condition of the items.[9]

93.   At all times relevant herein, Amazon's "A-to-z Guarantee" provided:

> "We want you to buy with confidence anytime you make a purchase on the Amazon.com website or use Amazon Pay; that's why we guarantee purchases from third-party sellers when payment is made via the Amazon.com website .... The condition of the item you buy and its timely delivery are guaranteed under the Amazon A-to-z Guarantee."

94.   The A-to-Z Guarantee covers defective products sold by third-party sellers.

---

[8] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=202074030 (last visited October 20, 2024).
[9]*See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=GQ37ZCNECJKTFYQV (last visited October 20, 2024).

95. The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," was assigned an ASIN number from Amazon, and was a consumer product.

96. The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," was imported, distributed and sold in U.S. commerce.

97. At all times relevant herein, Amazon provided an electronic marketplace that connects buyers and sellers, including the buyers and sellers of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

98. iHeat applied to register the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," which was assigned an ASIN number from Amazon, as a product sold through Amazon's FBA program.

99. Amazon retained the right to refuse or reject registration of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," for various reasons.

100. Amazon approved the registration of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," as a product sold on amazon.com through Amazon's FBA program.

101. Amazon made the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," available for purchase on its Amazon.com website through Amazon's FBA program.

17

102.    Upon reason and belief, the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," was first made available for sale on amazon.com in January of 2017 and continued to be available for sale on amazon.com until recently removed by Amazon in early 2024.

103.    The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," was imported, distributed, and offered for sale to consumers on amazon.com under the FBA program.

104.    Amazon provided logistics service to iHeat for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

105.    iHeat shipped the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon to an Amazon fulfillment center for storage.

106.    Amazon accepted possession of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," and provided the iHeat insole a corresponding ASIN number.

107.    Upon receiving the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," it was then scanned by Amazon and entered it into its tracking system.[10]

---

[10] *See* Amazon, https://sellercentral.amazon.com/gp/help/external/G201081250?language=en_US (last visited October 20, 2024).

108.    The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," was warehoused or stored by Amazon at an Amazon fulfillment center or warehouse.

109.    Amazon charged fees for the storage of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," at its warehouses or Amazon fulfillment centers.

110.    The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," was inventoried by Amazon.

111.    At all times relevant herein, Amazon provided inventory tracking and shipping information regarding the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

112.    Amazon attracted customers to the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," by listing it and making it available for purchase on its Amazon.com website.

113.    Customers purchased the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," from the Amazon.com website by adding it to their Amazon cart.

114.    Amazon charged customers purchasing the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," by charging customer's credit card or other payment information maintained by Amazon in its files or systems.

115.    Amazon accepted the risk that the customer's payment information for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," could turn out to be fraudulent.

116.    Amazon received and processed the payments for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," purchased from the Amazon.com website.

117.    Upon purchase by an Amazon user, Amazon retrieved the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," purchased on the Amazon.com website from one or more of its Amazon fulfillment centers or warehouses.

118.    Amazon packed the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," in boxes from Amazon for shipment to customers.

119.    Amazon controlled the packaging of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," purchased on the Amazon.com website.

120.    Amazon retained control to ship the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," purchased on the Amazon.com website in Amazon branded boxes which may include the Amazon name, logo and other Amazon-specific branding and messaging.

121.    Amazon retained control to include in the box with the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," other Amazon promotional materials and Amazon-specific messaging.

20

122.    Amazon retained control to ship together with the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," products offered by Amazon itself or other third-party sellers.

123.    Amazon shipped the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," purchased on theAmazon.com website to purchasers using either Amazon's own shipping carriers, Amazon approved shipping carriers, or third-party carriers.

124.    Amazon selected the shipping carriers and made the arrangements for the shipping carriers to pick up the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," from an Amazon Fulfillment Center warehouse and deliver it to the customer.

125.    Amazon handled and processed all customer returns of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

126.    Customers who sought to return the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," purchased on theAmazon.com website would ship them back to Amazon, not IHeat.

127.    Amazon inspected the customer returns of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," and determined whether they could be resold.

128.    If Amazon determined that a "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," returned by a

21

customer could be resold, Amazon returned it to inventory at an Amazon fulfillment center or warehouse.

129. Amazon provided and offered other services with respect to the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," consistent with the FBA program and its policies and procedures.

130. Amazon controlled the conditions of iHeat's offer for sale of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," on the Amazon.com website.

131. Amazon owned and controlled the relationship with the buyer of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," on the Amazon.com website.

132. Amazon limited and/or conditioned iHeat's access to Amazon's customer information.

133. Amazon required iHeat to communicate with customers through Amazon regarding the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," made available for purchase on itsAmazon.com website. Amazon required customers to communicate through Amazon regarding the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," which was made available for purchase on its Amazon.com website.

134. Amazon required iHeat to use only the tools and methods designated by Amazon to communicate with Amazon customers.

135. Amazon prohibited iHeat from using Amazon customer or transaction information for marketing or promotional purposes.

136.    Amazon did not contact iHeat for approval of customer purchases of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon. Amazon made such approvals.

137.    Amazon itself decided whether to allow each customer purchase of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," to be completed.

138.    Amazon charged fees on the purchase of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," sold on itsAmazon.com website.

139.    After deducting its fees, Amazon periodically remitted the remaining proceeds of the sales of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," to iHeat.

140.    Amazon was pivotal in bringing iHeat's "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," to market for consumers in the United States.

141.    Amazon is a direct link in the chain of distribution of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

142.    Amazon acted as an intermediary between iHeat and the consumer for the sale and distribution of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

143.    Amazon is a retailer and seller of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

144.    Amazon was a "distributor" that "distributed" the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

145.    Product reviews play a vital role in a product's marketability on Amazon.com.

146.    Consumers on the Amazon.com website regularly use product reviews and other feedback about products and services to help them make decisions as to which products to purchase.

147.    At all times relevant herein, Amazon was aware that customer reviews and other forms of consumer feedback could make or break a product sold on its website. Put differently, positive reviews could generate increased sales, and negative reviews could reduce sales.

148.    Amazon implemented a system for users of its website to place product reviews and other consumer feedback on the listing page of products sold by Amazon and third-party vendors, including the listing for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

149.    At all times relevant herein, Amazon established and maintained "Guidelines forAmazon.com Community participation," which provided a means for customer and user voices to be heard. [11]

150.    At all times relevant herein, Amazon established and maintained an "Amazon Community," which provided various features for engaging Amazon users and sharing feedback about products and services.[12]

---

[11] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201929730 (last visited October 20, 2024).
[12] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=\201929730 (last visited October 20, 2024).

24

151.    At all times relevant herein, Amazon's Community Guidelines applied to Community features, including Customer Reviews and Customer Questions & Answers.[13]

152.    At all times relevant herein, Amazon maintained control of the content of Customer Reviews, Customer Questions & Answers, and other Amazon Community content published on the amazon.com website, including the Customer Reviews and Customer Questions & Answers published in association with the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

153.    At all times relevant herein, Amazon's Community Guidelines assured and promised its users that Amazon strictly prohibited "false, misleading, or inauthentic content" in its Customer Reviews, Customer Questions & Answers and other "Amazon Community" content.[14]

154.    At all times relevant herein, Amazon's Community Guidelines assured and promised its users: "If you violate our Guidelines, we may restrict your ability to use Community features, remove content, delist related products, or suspend or terminate your account." [15]

155.    At all times relevant herein, Amazon assured and promised its users: "These Guidelines apply to any content (including text, images, video, and links) you submit to Amazon and actions you take (such as voting on helpfulness or smiling at a post) when using Community features."[16]

156.    At all times relevant herein, Amazon knew or should have known that users of the Amazon.com website would rely upon its assurances and promises contained in its Community Guidelines.

---

[13] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201929730 (last visited October 20, 2024).
[14] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201929730 (last visited October 20, 2024).
[15] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201929730 (last visited October 20, 2024).
[16] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201929730 (last visited October 20, 2024).

157.    At all times relevant herein, Amazon knew or should have known that Customer Reviews posted on the first page of a product listing are read and/or relied upon more frequently by users of the Amazon.com website than those posted on subsequent pages of a product listing

158.    Dustin searched for heated insoles on Amazon and the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," was listed first by Amazon.

159.    On and before January 29, 2023, on the product listing for "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," Amazon's website indicated that there was a four (4) out of five (5) star rating for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

160.    Based on information provided by both iHeat and Amazon, which included the search results, customer reviews, promise and guarantees regarding the safety and reliability of the insole, etc., Dustin believed that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," were not only recommended by Amazon, but that they were safe for use.

### *The Purchase: January 29, 2023*

161.    On or about January 29, 2023, Dustin instructed his wife to purchase the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," for Dustin for use at work.

162.    Dustin instructed his wife to purchase the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon, in reliance upon the statements,

26

representations, guarantees, warranties and/or promises made by iHeat and published on Amazon.com stated above.

163. Dustin instructed his wife to purchase the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," in reliance upon the reviews appearing on the first page of the product's Amazon.com website.

164. Dustin's wife instructed Amazon to deliver the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," to the home where she and Dustin live with their children.

165. Amazon charged Dustin's wife $72.75 for the purchase of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

166. Amazon assigned the order an Amazon.com order number: 112-5236285-4197849.

167. After Dustin's wife made the purchase on the Amazon marketplace website, Amazon retrieved the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," from inventory at an Amazon fulfillment center or warehouse.

168. Amazon packed the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," in a box printed with Amazon's name and logo.

169. Amazon applied a shipping label to the box containing the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

27

170. Amazon selected the shipping carrier that would deliver the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," to the home of Dustin and his wife.

171. Amazon provided the instructions and arrangements for the shipping carrier to pick up the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," from an Amazon Fulfillment Center or warehouse for delivery to Dustin's home.

172. Amazon delivered and transferred the box containing the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," to a carrier for delivery to Dustin's home address.

173. Amazon sent the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," to Dustin's home address via free shipping.

174. Thereafter, upon information and belief, Amazon remitted to iHeat the money collected from Dustin's wife for the purchase of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," less Amazon's service fees and shipping costs.

175. The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," were delivered to the home of Dustin on or about February 1, 2023.

176. The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," purchased by Dustin's wife arrived at Dustin's home in a box bearing the Amazon name and logo.

28

177. On or about February 1, 2023, Dustin received the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," as a gift from his wife.

178. On or about February 1, 2023, Dustin "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," using the supplied charger.

179. Dustin placed the insoles in his boots, which he wore four (4) of five (5) times.

180. On February 15, 2024, Dustin was working in Weber County, Utah.

181. Dustin had placed the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" into his work boot for the day.

182. Approximately 2.5 hours after putting on the boot with the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" inside, suddenly and without warning, Dustin's foot began experiencing immense pain and burning in his left foot.

183. Dustin looked down to see what was happening to find that his left boot was on fire and smoking.

184. Terrified and in excruciating pain, Dustin was able to eventually extinguish the fire and remove the boot from his foot.

185. The "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," had started on fire and was smoking.

186. Dustin's foot was severely burned as a result of the defective and unreasonably dangerous "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," starting on fire while wearing his boot.

29

187.     Dustin went to the emergency room, where he was treated for serious burns to his left foot.

188.     Dustin incurred substantial damages as a result of the defective and unreasonably dangerous "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

189.     Dustin's injuries are severe, and Dustin has sustained permanent damage to his left foot, which has, and will continue to, adversely affect his ability to perform his job as owner/operator of an HVAC company.

190.     Dustin had to miss a significant amount of work, and now lives with daily burning nerve pain, itching, discomfort, and has difficulty standing, which is causing numerous other issues with his hips, legs, and gait.

191.     Dustin has seen numerous providers regarding this injury, who inform Dustin that his daily itching, discomfort, pain, and burning nerve pain will remain with him permanently for the rest of his life.

### Amazon's Failure to Protect Customers from Product Injuries

192.     Upon information and belief, China-based sellers represent a significant portion of the third-party vendors selling products on Amazon's marketplace website.

193.     Upon information and belief, Chinese sellers make up over 63% of all third-party sellers on Amazon.[17]

194.     Upon information and belief, Amazon actively recruits sellers from China by routinely holding summits in Mainland China.

---

[17] *See* Amazon, https://www.ecomcrew.com/chinese-sellers-manipulating-amazon/ (last visited October 24, 2024).

30

195.    At all times relevant herein, it was foreseeable that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," might or could cause injury or damage to consumers who purchased the product on the Amazon.com website.

196.    At all times relevant herein, Amazon knew or should have known that it was foreseeable that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," might or could cause injury or damage to consumers who purchased the product on the Amazon.com website.

197.    Amazon failed to conduct proper and/or adequate vetting of products sold on the amazon.com website by iHeat, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," thereby exposing consumers to injuries and damages from defective products.

198.    Amazon failed to "protect Amazon customers from risks of injury associated with products offered on Amazon."[18]

199.    Given Amazon's dominance in the retail world as the nation's largest online retailer, it clearly possesses the market power to require sellers such as iHeat to ensure the safety of the products Amazon would sale to consumers in America, but in the interest of profits and to increase sales of low-cost products from China, Amazon chose to forego any such responsibility.

200.    On or about February 15, 2024, Dustin's wife contacted Amazon and informed Amazon customer service and review that the "iHeat Heated Insoles with Remote Control,

---

[18] *See* Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=202074030 (last visited October 24, 2024).

Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," had spontaneously exploded without warning and severely burned and injured Dustin.

201.    On February 16, 2024, Dustin's wife again reached out to Amazon customer service and review to again inform Amazon that "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," had spontaneously and without warning exploded and severely burned an injured Dustin.

202.    Neither Dustin nor Dustin's wife heard back from Amazon or iHeat regarding this incident.

203.    Upon receipt of Dustin and Dustin's wife complaint regarding Dustin's injuries, Amazon breached its promises and assurances to its users in that it failed to conduct an investigation, failed to remove the product from the website, failed to reach out to iHeat for additional information, failed to place relevant warnings on the product detail page, and failed to take any other action.

204.    Upon receipt of Dustin and Dustin's wife complaint regarding Dustin's injuries, Amazon breached its promises and assurances to its users in that it failed to report any product safety concerns regarding the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon to applicable government agencies in order to bolster safety data and help facilitate any necessary recalls.

205.    Upon reason and belief, other individuals have been burned by the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon.

206. Upon reason and belief, Amazon is aware that other individuals have reported that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," have caused burn injuries.

207. After Dustin's incident, Amazon.com website continued to sell the product, maintain the product listing and Customer Reviews for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned from Amazon for at least a year.

208. In fact, on February 16, 2024, over one year after Dustin's foot was severely burned after the Amazon.com website continued to sell and maintain the product listing and Customer Reviews for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," spontaneously started on fire and burned Dustin's foot, Amazon.com website had the following "five star" Customer Review for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping:"

☆☆☆☆☆ "My son loves them [i.e., iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping"]. He works outdoors. Jenny."
By Jenny G. on February 16, 2024.

209. Although Amazon is aware of multiple reports of burn injuries caused by the ""iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," Amazon breached its promises and assurances to its users to timely "remove the product from the website, reach out to sellers and manufacturers for additional information, place relevant warnings on the product detail page, or take other actions depending on the situation."

210.   Although Amazon is well-aware of multiple reports of burn injuries caused by the ""iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," Amazon breached its promises and assurances to its users in that it has failed to date to report any product safety concerns regarding the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," to applicable government agencies in order to bolster their safety data and help facilitate any necessary recalls.

211.   Although Amazon is well-aware of multiple reports of burn injuries caused by the ""iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," Amazon breached its promises and assurances to its users in that it has failed to take other action including, but not limited to, transmitting to purchasers information or warnings advising them that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," may present a risk of burn injuries.

212.   Although Amazon is well-aware of reports of burn injuries caused by the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," Amazon breached its promises and assurances to its users in that it has failed to protect Amazon customers from risks of injury associated with that product by looking into and acting on reported safety complaints and incidents.

## FIRST CAUSE OF ACTION
Strict Liability
(Defendants iHeat, Shenzhen Technology Co., Ltd., Zhangfengqing)

1.   Plaintiff incorporates allegations of all previous paragraphs as if fully set forth herein.

2.     At all times relevant hereto, iHeat was engaged in the business of designing, manufacturing, selling and/or distributing, for ultimate sale to members of the general public, electric heated insoles, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

3.     At all times relevant hereto, iHeat manufactured, sold and/or distributed electric heated insoles, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," through Amazon for sale on its Amazon.com.

4.     At the time the electric heated insoles, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" left the possession of iHeat, and at the time the electric heated insoles, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" entered the stream of commerce, they were in an unreasonably dangerous and defective condition including, but *not* limited to, the following:

a) Inadequate design of the heating element;
b) Inadequate design of the battery pack and holder;
c) Inadequate design of the charger;
d) Inadequate design of the insole;
e) Inadequate design of the heat settings;
f) Inadequate design of the remote;
g) Inadequate warnings about usage;
h) Inadequate warnings and instructions to consumers on how to safely use the iHeat insole;
i) Inadequate design as insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures to cause malfunction, explosion, fire, or other harm;
j) Inadequate warnings and instructions for users with medical conditions;
k) The heating elements produced excessively high temperatures sufficient to cause the insole to malfunction, start on fire, and/or cause burn injuries;
l) The insoles lacked a timed shut-off mechanism to prevent spontaneous malfunction, explosion, fires, burns, or other harm;
m) Failure to warn about risk of malfunction;

n) Failure to warn of the dangers associated with use at various temperature settings;

5. As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" failed to perform as a consumer would reasonably expect them to perform when the product was being used in a normal and expected manner.

6. As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the risks of using "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" outweighed the utility or usefulness of the product.

7. It was the duty of iHeat in designing, manufacturing, selling and/or distributing the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" to make them reasonably safe for their intended and foreseeable uses, and to ascertain that the insoles were free from defects which would render them unsafe.

8. In breach of its duty, iHeat designed, manufactured, sold and/or distributed the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" in a defective, unsafe and unreasonably dangerous condition.

9. As a direct and proximate result of one or more of the foregoing unreasonably dangerous and defective conditions and iHeat's acts or omissions, Plaintiff sustained severe personal injuries.

10. As a direct and proximate result of one or more of the unreasonably dangerous and defective conditions of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential

36

for Winter Outdoor Hiking, Sports, and Camping" resulting in the serious injuries, Plaintiff has sustained damages.

11.     iHeat is strictly liable for the injuries complained of herein by reason of having sold and placed into the stream of commerce the defective "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," which were unreasonably dangerous to users.

## SECOND CAUSE OF ACTION
### Strict Liability
### (Defendant Amazon)

12.     Plaintiff incorporates all previous allegations as if fully set forth herein.

13.     At all times relevant hereto, Amazon was engaged in the business of selling and/or distributing, for ultimate sale to members of the general public, the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned to it by Amazon.

14.     At all times relevant hereto, Amazon sold and/or distributed the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned to it by Amazon, on Amazon's website.

15.     At all times relevant hereto, Amazon exercised significant control over "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its corresponding ASIN number assigned to it by Amazon, and its sale to consumers on its website, in the following ways:

      a.  Assign the iHeat insole at issue an Amazon Standard Identification Number ("ASIN");

      b.  Maintain electronic records that track inventory of the iHeat insole stored in Amazon Fulfillment Centers or other Amazon warehouses or facilities;

37

c. Ship the iHeat insole to the customer directly from Amazon Fulfillment Centers or other Amazon warehouses or facilities;

d. Store the product at Amazon Fulfillment Centers or other Amazon warehouses or facilities until the product is sold to the customer or returned to the third-party seller as "unsuitable"

e. Handle all customer service issues relating to packaging, handling and shipment and customer returns, refunds and adjustments related to the Amazon Fulfillment Unit;

f. Determine the amounts charged to customers for shipping and gift wrap service for iHeat sold and fulfilled through the FBA program;

g. Restrict, modify or otherwise determine the content, appearance, design, functionality and all other aspects of a iHeat's insole Product Ads;

h. Remove iHeat's Product Ad without notice;

i. Determine the content, appearance, design, functionality and all other aspects of the Amazon Sites, including by redesigning, modifying, removing or restriction access to the iHeat insole, and by suspending, prohibiting or removing any listing;

j. Ensure iHeat insole (including packaging) comply with all applicable Laws (including marking and labeling requirements);

k. Imported, distributed, and offered the iHeat insole for sale to consumers on Amazon.com under Amazon's FBA program;

l. Retrieved the iHeat insole from one or more of its Amazon fulfillment centers or warehouses and shipped the product to customers;

m. Shipped the iHeat insole in Amazon branded boxes which may include Amazon name, logo and other Amazon-specific branding and messaging;

n. Retained the option to include other Amazon promotional materials and Amazon-specific messaging in the box along with the iHeat insole;

o. Shipped the purchased iHeat insole using either Amazon's own shipping carriers, Amazon approved shipping carriers, or third-party carriers; and

p. Handle and process all customer returns of the iHeat insoles.

16. At all times relevant hereto, Amazon had knowledge that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" were unreasonably dangerous and defective.

17. At the time the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" entered the stream of commerce, they were in an unreasonably dangerous and defective condition including, but not limited to, the following:

a. Inadequate design of the heating element;

38

b.  Inadequate design of the battery pack and holder;

c.  Inadequate design of the charger;

d.  Inadequate design of the insole;

e.  Inadequate design of the heat settings;

f.  Inadequate design of the remote;

g.  Inadequate warnings about usage;

h.  Inadequate warnings and instructions to consumers on how to safely use the iHeat insole;

i.  Inadequate design as insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures to cause malfunction, explosion, fire, or other harm;

j.  Inadequate warnings and instructions for users with medical conditions;

k.  The heating elements produced excessively high temperatures sufficient to cause the insole to malfunction, start on fire, and/or cause burn injuries;

l.  The insoles lacked a timed shut-off mechanism to prevent spontaneous malfunction, explosion, fires, burns, or other harm;

m.  Failure to warn about risk of malfunction;

n.  Failure to warn of the dangers associated with use at various temperature settings;

18.    At all times relevant hereto, Amazon was a seller, distributer, and/or retailer in the chain of distribution for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" with its corresponding ASIN number assigned to it from Amazon and was subject to strict liability in tort.

19.    As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" with its corresponding ASIN number assigned to it by Amazon, failed to perform as a consumer would reasonably expect them to perform when the product was being used in a normal and expected manner.

20.    As a direct and proximate result of one or more of these unreasonably dangerous and defective conditions, the risks of using the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" with its

39

corresponding ASIN number assigned to it by Amazon, outweighed the utility or usefulness of the product.

21.     It was the duty of Amazon in selling and/or distributing "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" with its corresponding ASIN number assigned to it by Amazon, to make them reasonably safe for their intended and foreseeable uses, and to ascertain that the iHeat insoles were free from defects that would render them unsafe.

22.     In breach of its duty, Amazon sold and/or distributed the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" with its corresponding ASIN number assigned to it by Amazon, in a defective, unsafe and unreasonably dangerous condition.

23.     As a direct and proximate result of one or more of the foregoing unreasonably dangerous and defective conditions and Amazon's acts and/or omissions, Plaintiff sustained severe personal injuries.

24.     As a direct and proximate result of one or more of the foregoing unreasonably dangerous and defective conditions and Amazon's acts and/or omissions resulting in the personal injuries of Plaintiff, Plaintiff has suffered damages.

**THIRD CAUSE OF ACTION**
Negligence
(All Defendants)

25.     Plaintiff incorporates all previous allegations as if set forth in full herein.

26.     Defendants owed Plaintiff a duty of care to design, manufacture, distribute, and sell reasonably safe products and to use due care in order to avoid foreseeable harm to the intended

40

users of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," including Plaintiff.

27.    Defendants breached that duty when Defendants placed the unreasonably safe "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" into the stream of commerce with the following defects:

    a.  Inadequate design of the heating element;
    b.  Inadequate design of the battery pack and holder;
    c.  Inadequate design of the charger;
    d.  Inadequate design of the insole;
    e.  Inadequate design of the heat settings;
    f.  Inadequate design of the remote;
    g.  Inadequate warnings about usage;
    h.  Inadequate warnings and instructions to consumers on how to safely use the iHeat insole;
    i.  Inadequate design as insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures to cause malfunction, explosion, fire, or other harm;
    j.  Inadequate warnings and instructions for users with medical conditions;
    k.  The heating elements produced excessively high temperatures sufficient to cause the insole to malfunction, start on fire, and/or cause burn injuries;
    l.  The insoles lacked a timed shut-off mechanism to prevent spontaneous malfunction, explosion, fires, burns, or other harm;
    m.  Failure to warn about risk of malfunction;
    n.  Failure to warn of the dangers associated with use at various temperature settings;

28.    Defendants also breached their duty of care by failing to exercise reasonable care in the design, sale, and distribution of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

29.    Defendants knew, or should have known, in the exercise of ordinary care, of the unsafe conditions of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

30.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiff sustained severe injuries.

41

31.  As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiff has suffered economic and non-economic damages.

## FOURTH CAUSE OF ACTION
Gross Negligence
(All Defendants)

32.  Plaintiff incorporates all previous allegations as if fully set forth herein.

33.  Defendants owed Plaintiff a duty of care to design, manufacture, distribute, and sell reasonably safe products and to use due care in order to avoid foreseeable harm to the intended users of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," including Plaintiff.

34.  Defendants breached that duty when Defendants placed the unreasonably safe "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" into the stream of commerce with the following defects:

   a.  Inadequate design of the heating element;
   b.  Inadequate design of the battery pack and holder;
   c.  Inadequate design of the charger;
   d.  Inadequate design of the insole;
   e.  Inadequate design of the heat settings;
   f.  Inadequate design of the remote;
   g.  Inadequate warnings about usage;
   h.  Inadequate warnings and instructions to consumers on how to safely use the iHeat insole;
   i.  Inadequate design as insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures to cause malfunction, explosion, fire, or other harm;
   j.  Inadequate warnings and instructions for users with medical conditions;
   k.  The heating elements produced excessively high temperatures sufficient to cause the insole to malfunction, start on fire, and/or cause burn injuries;
   l.  The insoles lacked a timed shut-off mechanism to prevent spontaneous malfunction, explosion, fires, burns, or other harm;
   m.  Failure to warn about risk of malfunction;
   n.  Failure to warn of the dangers associated with use at various temperature settings;

42

35. Defendants also breached their duty of care by failing to exercise reasonable care in the design, sale, and distribution of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

36. Defendants knew, or should have known, in the exercise of ordinary care, of the unsafe conditions of the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

37. Defendants failed to observe even slight care, and/or demonstrated carelessness or recklessness to a degree that shows utter indifference and/or a conscious disregard for the consequences.

38. As a direct and proximate result of Defendants' negligent acts and/or omissions, carelessness or recklessness to a degree that shows utter indifference and/or a conscious disregard for the consequences, Plaintiff sustained severe injuries.

39. As a direct and proximate result of Defendants' negligent acts and/or omissions, carelessness or recklessness to a degree that shows utter indifference and/or a conscious disregard for the consequences, Plaintiff has suffered economic and non-economic damages.

**FIFTH CAUSE OF ACTION**
Breach of the Implied Warranty of Merchantability
(All Defendants)

40. Plaintiff incorporates all previous allegations as if set forth fully herein.

41. Defendants are merchants selling goods, including the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

42. Plaintiff's wife purchased the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," at the request of Plaintiff.

43

43. By offering the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," iHeat made an implied warranty that the product was of merchantable quality pursuant to the applicable provisions of the Uniform Commercial Code.

44. Defendants breached its implied warranty in that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," were not of merchantable quality in one or more of the following respects:

a. Inadequate design of the heating element;
b. Inadequate design of the battery pack and holder;
c. Inadequate design of the heat settings;
d. Inadequate warnings about temperature settings;
e. Inadequate warnings and instructions on how to safely use the product;
f. Inadequate design of heating elements, which produced excessively high temperatures to cause malfunction;
g. The insoles lacked a timed shut-off mechanism to prevent overuse and malfunction;
h. Inadequate design as insoles lacked a temperature limiting mechanism that would prevent excessively high temperatures sufficient to cause malfunction;
i. Inadequate warnings regarding risks and malfunction.

45. As a direct and proximate result of Defendants breach of the implied warranty of merchantability, Plaintiff suffered severe personal injuries.

46. As a direct and proximate result of the Defendants breach of the implied warranty of merchantability, Plaintiff suffered damages.

## SIXTH CAUSE OF ACTION
Promissory Estoppel
(All Defendants)

47. Plaintiff incorporates all previous allegations as if fully set forth herein.

48.     Amazon made promises to Plaintiff and Plaintiff's wife that Amazon would protect Amazon's customers from risks of injury associated with products offered by looking into and taking action on reported safety complaints and incidents.

49.     iHeat offers a money back guarantee that their "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" work that their products are safe, effective, and can be used in cold winter conditions.

50.     Amazon assured and promised its users, including Plaintiff and Plaintiff's wife, that with respect to the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its associated ASIN number assigned by Amazon, that Amazon would do the following:

    a.  Strictly prohibit false, misleading or inauthentic content;
    b.  Remove content that violates the community guidelines;
    c.  Delist related products.

51.     Amazon users, including Plaintiff and Plaintiff's wife, acted with prudence and in reasonable reliance on the promises, guarantees, warranties, and other statements provided on the product detail page for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," with its associated ASIN number assigned by Amazon, that the product was safe because of Amazon's assurances and promises to otherwise monitor and remove unsafe products or post a relevant warning.

52.     It was reasonable for Plaintiff to rely on customer reviews from Amazon about the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," which had given the product five stars.

53.   iHeat users, including Plaintiff and his wife, reasonably relief on the promises of iHeat and money back guarantee of iHeat that their product was safe, effective, and ideal for working in cold temperatures outside.

54.   Amazon users, including Plaintiff and Plaintiff's wife, reasonably relied on Amazon's assurances and promises to investigate customer reviews.

55.   Amazon users, including Plaintiff and his wife, reasonably relied on the statements on customer reviews being honest and not misleading because Amazon assured and promised that false, misleading or inauthentic community content would be removed.

56.   Defendants were aware of all material facts.

57.   As a direct and proximate result of Amazon's failure to monitor, remove, and investigate products with safety concerns, place relevant warnings on the product detail page, remove false, misleading or inauthentic content, and delist related products, Plaintiff suffered severe burns and personal injuries.

58.   As a direct and proximate result of iHeat's promises and money back guarantee that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," Plaintiff suffered injuries.

59.   As a direct and proximate result of Amazon's breach of its promises to Amazon users, including Plaintiff and his wife, the Plaintiff sustained severe personal injuries.

60.   As a direct and proximate result of Amazon's breach of its promise resulting in the severe personal injuries of Plaintiff, Plaintiff has suffered economic and non-economic damages.

61.     As a direct and proximate result of iHeat's promises and money back guarantee that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," Plaintiff suffered damages.

## SEVENTH CAUSE OF ACTION
Breach of Contract
(All Defendants)

62.     Plaintiff incorporates all previous allegations as if set forth fully herein.

63.     Plaintiff entered into a contract with Defendants when purchasing the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

64.     Plaintiff purchased and paid for the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping," performing his end of the contractual bargain.

65.     Defendants breached the contract by, *inter alia*, the following:

   a. Sending a product that did not conform to promises, warranties, guaranties, and other representations.
   b. Sending a product that was unreasonably dangerous and defective, which spontaneously started on fire and severely injured Plaintiff while Plaintiff was using product;

66.     Plaintiff suffered damages as a result of Defendants' breach of contract when the insole spontaneously exploded and seriously injured Plaintiff.

## EIGHTH CAUSE OF ACTION
Breach of the Implied Covenant of Good Faith and Fair Dealing
(All Defendants)

67.     Plaintiff incorporates all previous allegations as if set forth fully herein.

47

68. Plaintiff and Defendants had a contract when Plaintiff purchased the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

69. Defendants had an obligation to act in good faith and deal fairly and consistently with the Plaintiff's justified expectations arising under the contract.

70. Plaintiff expected the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" to be safe, effective, comfortable, to reduce foot stress, promote circulation, not be defective, not be unreasonably dangerous, to not spontaneously explode while Plaintiff was using, and not being severely injured.

71. Defendants knew, or had reason to know, that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" was not safe, effective, and that the promises, guarantees, assurances, and other claims were without support or merit.

72. Upon reason and belief, Defendants knew that other consumers that had purchased the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" had been injured and/or the product had malfunctioned.

73. Defendants breached that covenant of good faith and fair dealing by advertising, selling, promising, guaranteeing, and otherwise representing that the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" was safe, effective, and provided various benefits, which included, but are not limited to:

   a. "Perfect for extreme cold weather activities like hunting, skiing, snowboarding, and more."
   b. "Ideal for winter work and adventures."
   c. "Comfortable and a pleasure to wear throughout the day"
   d. "Promotes blood circulation"

    e.   "Benefits individuals with arthritis, poor circulation, stiff joints, and other conditions"

    f.   "Provides arch support and reduces foot stress, allowing for more comfortable and supported walking"

    g.  Provide all-day comfort up to 10+ hours of continuous warmth, ensuring feet "stay toasty during outdoor activities."

    h.  Ergonomic design and ventilation holes ensure optimal air and heat distribution.

    i.   "Experience warmth, comfort, and support like never before with iHeat heated insoles"

74.     Because of Defendants breach, Plaintiff suffered injuries and damages.

## NINTH CAUSE OF ACTION
### Violation Utah Consumer Sales Practices Act
### (All Defendants)

75.     Plaintiff incorporates all previous allegations as if set forth fully herein.

76.     Defendants sell and/or offer iHeat's "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

77.     Defendants knowingly and/or intentionally represented that the iHeat "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping" had characteristics, uses, and/or benefits it did not, and/or was of a particular standard, quality, grade, style, model it was not, by making various representations, promises, guarantees, which include, but are not limited to, the following:

    a.   "Perfect for extreme cold weather activities like hunting, skiing, snowboarding, and more."

    b.   "Ideal for winter work and adventures."

    c.   "Comfortable and a pleasure to wear throughout the day"

    d.   "Promotes blood circulation"

    e.   "Benefits individuals with arthritis, poor circulation, stiff joints, and other conditions"

    f.   "Provides arch support and reduces foot stress, allowing for more comfortable and supported walking"

    g.  Provide all-day comfort up to 10+ hours of continuous warmth, ensuring feet "stay toasty during outdoor activities."

    h.  Ergonomic design and ventilation holes ensure optimal air and heat distribution.

      i.  "Experience warmth, comfort, and support like never before with iHeat heated insoles"

78.    Plaintiff relied on representations made by Defendants, which were not true, when purchasing the "iHeat Heated Insoles with Remote Control, Rechargeable, Essential for Winter Outdoor Hiking, Sports, and Camping."

79.    Plaintiff was injured as a result of Defendants misrepresentations.

80.    Plaintiff suffered damages as a result of Defendants misrepresentations.

## DAMAGES

81.    Plaintiff hereby incorporates all previous paragraphs as if set forth fully herein.

82.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has, among other things, suffered serious and permanent injuries.

83.    As a direct and proximate result of these injuries, Plaintiff has suffered substantial pain and anguish, as well as severe emotional distress.

84.    As a further direct and proximate result of the acts and omissions of Defendants, it was and is necessary for Plaintiff to seek medical care and treatment.

85.    As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has been injured. Plaintiff has suffered and will suffer the following additional damages:

    a.  Past and future damages for costs of medical treatment and health care due to said injuries.

    b.  Past and future damages, if any, for lost wages/impaired earnings; and past and future damages for disfigurement, impairment of bodily functions, and pain and severe mental anguish suffered.

    c.  Past and future damages, if any, for compensated and gratuitous care and services, including attendant care, nursing care, medical care, psychological care, therapy,

and other care and assistance, and for the payment of medical expenses, rendered to and/or paid on behalf of Plaintiff by other persons and entities. The amount of said special damages shall be the subject of proof at trial.

d.  Past and future damages for suffering loss of consortium, loss of society, affection, assistance, and fellowship, all to the detriment of their parent-child relationships

e.  General damages for Plaintiff's pain and suffering (both mental and physical), severe emotional distress and alterations in Plaintiff's lifestyle.

86.  Plaintiffs also pray for punitive damages for Defendants willful and malicious conduct, and/or Defendants conduct that manifested a knowing and reckless indifference toward, and a disregard of, the rights of others.

## **PRAYER FOR RELIEF**

BASED UPON THE FOREGOING, Plaintiff prays for judgment against Defendants as follows:

1. For special damages alleged above;
2. For general damages alleged above;
3. For punitive damages alleged above;
3. For costs of court;
4. For pre and post judgment interest and costs provided by law; and
5. For such other and further relief as may be justified and required by law.

DATED this 28th day of October 2024.

PARKER & MCCONKIE

/s/ Bronson D. Bills
Bronson D. Bills
*Attorney for Plaintiff*

51

Plaintiff's address:

c/o Parker & McConkie
7090 S. Union Park Ave, Suite 160
Midvale, Utah 84047

IN THE SECOND JUDICIAL DISTRICT COURT WEBER COUNTY, STATE OF UTAH

**Dustin Grantham**

*Plaintiff(s) / Petitioner(s)*

v.

Case No.: 240907356

**iHeat Group, Shenzhen Tejiali Technology Co., Ltd., Zhangfengqing, Amazon.com, LLC**

*Defendant(s) / Respondent(s)*

## UNSWORN DECLARATION OF SERVICE

I, Vincent Casaus, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to Amazon.com LLC in Salt Lake County, UT on November 1, 2024 at 11:19 am at 15 West South Temple Street, suite 600, Salt Lake City, UT 84101 by leaving the following documents with Sydney Alger who as Authorized person at CCI is authorized by appointment or by law to receive service of process for Amazon.com LLC.

Summons
Complaint

White Female, est. age 25-34, glasses: N, Blonde hair, 140 lbs to 160 lbs, 5' 6" to 5' 9".
Geolocation of Serve: https://google.com/maps?q=40.7692362,-111.8918327
Photograph: See Exhibit 1

Total Cost: $90.00

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF UTAH THAT THE FACTS HEREIN ARE TRUE AND CORRECT.

Executed in

Salt Lake County                                        ,

UT          on    11/5/2024                    .

/s/ *Vincent Casaus*

Signature
Vincent Casaus
+1 (801) 673-9103

Proof Job #716674                          Grantham - Amazon                          Page 1



Exhibit 1a)